Good afternoon. Please be seated. We're here for the embankment argument in United States v. Maloney. Counsel ready? Okay. I will hear from the appellant. Good afternoon, Your Honors. John Lemon for Appellant John Maloney. Your Honors, Mr. Maloney should get a new trial because the prosecutor in this case deliberately withheld until his rebuttal closing a completely new argument that was based upon absolutely no record evidence, and I was denied the opportunity to respond. This argument was extremely prejudicial and well beyond the bounds of fair advocacy, as contemplated by every circuit court that has considered this issue. What was the new argument, Counselor? Well, the — Didn't you argue that what Maloney testified to yesterday was reasonable and it was credible, and the government is trying to say it was completely unreasonable, it's preposterous, and didn't you further say the testimony was palpable, visceral, and it was real, and the government never proved him a liar beyond a reasonable doubt? Didn't you say that? I absolutely did, but I'll — Therefore, wasn't the argument, then, or the issue whether your client was a liar or not, not the facts that the prosecutor suggested? My client's credibility was the issue in the case. That's absolutely right, but — Well, and then if it's argument we're really talking about here, prosecutor didn't talk one whit about different argument. He talked about whether your client was a liar or whether he wasn't. Well, we can broadly define argument and define — we can define argument in different ways, but the salient point here is that the prosecutor came up with a new fact in his rebuttal closing. There was no evidence at trial about Mr. Maloney's luggage, period. The prosecutor had an opportunity to ask his agents and didn't. He had an opportunity to ask Mr. Maloney on cross-examination and didn't. Did the prosecutor — Did the prosecutor-counselor ever state as a matter of fact in the record that Maloney did not have luggage? Yes, he did. Where? He — the quote — what he said was if he didn't have any luggage or if he had luggage, then the possibility would have been, I have to put it somewhere, wasn't — and maybe he had luggage, maybe he didn't, but either way, he wasn't credible. Actually, at ER-380, the quote is, and the final thing that is not there, colon, luggage, where is his stuff? Then at ER-384, quote, remember what is missing, among other things, colon, luggage. Did you object to the argument when made? I — yes, at the end, I — Because the objection that I read in the record is one that says misstates the facts. I objected to two other aspects of the rebuttal closing. After the closing. Well, during the closing, I objected to two other aspects of the rebuttal closing, but immediately upon the prosecutor finishing, I requested a server rebuttal and specifically identified — But that's my — that leads to my question. If you had been granted server rebuttal, would we have error in this case? That's a tough question. Maybe not. Well, I'm — but I want you to answer the tough question. Did he — if you — you're saying you should have been granted server rebuttal. Well, I know that — Would there be — would there be reversible error had you been granted server rebuttal? Well — Presumably he would have been acquitted, right? I'm — well, that's right, Judge. Sometimes I have to be reminded that that's a possibility. You know, Your Honor — That's my job. Your Honor, in United States v. Gleeson, the Second Circuit case, it was somewhat similar to this. Well, I mean, first, just give me your answer. Is it yes or no? Well, it's hard. I think — I don't know that I have a yes or no answer. I think it's a very difficult question. I think the answer is probably no, because this is a fact that came out of left field, and even if I'd had server rebuttal, it might not have cured it. Okay. Assume no for a second, and then just follow — stay with me for a minute. If you had asked the judge — I'm sorry. I'm not sure what no means. I forgot which way the question was. I'm sorry. I think what he's saying to me is that — is that perhaps being granted server rebuttal wouldn't have cured the problem, right? Okay. Thank you. Now, if that — if that's your position, what if the judge had said to the jury, this is an improper argument, I want you to disregard it? Would that have cured the problem, in your view? I think the Ninth Circuit law on curatives in this context, there's a divide. We didn't have one in this case, so, frankly, I don't know. Well, see, I — so your position is that once this bell was rung, everything was over. It didn't matter whether you got server rebuttal. It didn't matter whether the judge gave a curative instruction. Once this bell was rung, we had reversible error that couldn't be fixed. My position, and I'm really not trying to duck the question, but I think that is an issue for another day. I — my position is that didn't happen in this case. I didn't get server rebuttal. I didn't get a curative. I ask it because you didn't ask the judge to instruct the jury to disregard the argument. Well, I asked for server rebuttal, which was denied, and I moved for a mistrial. And specifically, when the jury came back with a note asking about an inventory report that — that they wanted to see, I specifically told the judge that I think they're looking for Private Santiago's luggage, and — and I believe I asked to reopen, and at a minimum, I asked for a mistrial. But — but am I right in thinking you didn't ask the judge to — I may not have expressly asked for a mistrial. — to sustain an objection to the argument and tell the jury to disregard it? I may not have made that specific objection. Thanks. So is the error here misconduct on the part of the prosecutor, or is it abusive discretion on the part of the district judge? Well, I — I mean, does it make a difference? I don't know that it makes a difference. I think with respect to the — the district court, the district court does not have discretion to permit the prosecutor to argue new facts that aren't in evidence in his rebuttal. So I think that that really decides it. We have a harmless error standard. So the question is, if you were given server rebuttal, what's your server rebuttal? Well, what I proffered at sidebar and was not allowed to argue to the jury is that the prosecutor had an opportunity to ask his agents and my client when he was on the witness stand about the luggage and chose not to do so. Is that what you would have said in server rebuttal, though? That's what I — well, that's what I said at the time I was going to say. Okay. What you wanted was a fair trial. Is that right? Yes. I mean, I'm serious about this. And the — and the — and the prosecution set out to sandbag you and your client. And they — and they did that in their — in their closing argument. And why in the world a judge wouldn't let you have server rebuttal is just beyond my comprehension. And, you know, the government has got all the cards. They put the case on, but they're so worried about losing a case that they stoop to low depths at times and they just muck up their own cases. So that's what it's all about, isn't it? You certainly had me at hello with that. I couldn't agree more. I don't think you're going to be able to persuade Judge Pegasin. Stay — stay — now, that was funny. I have to turn up my hearing aids, so tell me what you just said that was so good. You couldn't be persuaded in this case. He couldn't persuade you. I heard that. I heard that. What did you say before? Well, I — I completely agree. And, again, the issue here, the government has tried to characterize my closing argument as being the catalyst for this rebuttal, but we know it wasn't because the prosecutor admitted at oral argument — he was asked by Judge Gilman the day before the visiting judge from the Sixth Circuit, why didn't you ask Maloney when he was on the witness stand about his luggage? Because I didn't think I needed to. And then the follow-up question, well, weren't you sandbagging the defense? Yes, I was. I mean, he came out of the blocks with a rehearsed Jack Nicholson impersonation five minutes after my closing. This is something he had planned before my closing.  in rebuttal. It was something that was planned all along, and it is an extreme example of raising a new argument in rebuttal in violation of Rule 29.1. Well, if it's not a new argument, but it's really more new evidence, it's the same argument about he's not telling the truth, but it is arguably new evidence. If the panel may be mischaracterized in it and it's really new evidence, the question I have has to go with harmless error in light of this record and in light of what you would have said on serve rebuttal given the opportunity, why isn't it harmless error? Well, first of all, under the Hind v. Sullivan factors, every one of them weighs in favor of reversal here. Did the prosecutor misstate the evidence? Yes. Was there a curative given? No. Did the defense open the door? The door was open from opening statement. Was there an opportunity to respond? No. Was the argument prominent? I mean, absolutely. And it came at the very end. And then finally, the weight of the evidence. In his dissent, Judge Gilman does an excellent analysis of how close a case this really was, and it boiled down to credibility. And he cited the Ninth Circuit cases, the United States v. Sanchez, which was a similar border bust type of case. This actually took place at a checkpoint, but the idea is the same. And in that case, Sanchez was a plain error case where the defendant had the burden of proof because he was arguing duress. He had a prior conviction for the exact same offense, which was not part of the duress story. He was impeached by omission with his post-arrest statement where he had confessed to every element of the crime. The jury was out for less than an hour, but based on it being a battle over credibility, this Court said that's not harmless error. Here, it's preserved. My client didn't have the burden of proof. He didn't confess. He — this is a much better case than Sanchez. But is the standard of — My way of looking at this, one of the things that's most telling about this case, the jury's note. I mean, when the jury asked for — they wanted to know — they wanted a copy of Exhibit K, which actually, when I was preparing for this case, I wanted a copy of Exhibit K, too, which is not in the record. Right. But that was presumably to see what items they found — the government actually did find. It's an excellent point. Exhibit K, to the best of my recollection, was a property inventory that was — that was executed by one of the agents. I think I used that to either impeach him or refresh his recollection on a completely different point. But the jury was asking about it because they were looking for Private Santiago's luggage. Well, but if, in fact, that's true, when the jury note requested to see the inventory sheet, wouldn't the Court's response have solidified to the jury that the issue of luggage was not in evidence? Because what the Court did tell the jury was the exhibit wasn't in evidence and merely used to elicit testimony about how much money Maloney had on him at the time of arrest. So it, in fact, helps your — helps your story. It's not something that is in evidence. It's not something that even does. Well, I guess I don't know. I mean, I guess I'm — upon learning the exhibit has shown only pocket change, nothing else regarding the items in the possession, wouldn't the nature of the prosecutor's argument then have been cemented for the jury? It wasn't any good. I guess I'm not really tracking how that helped me. Well, I mean, you're saying that the fact that there was a note said that they wanted to know if there was luggage, but then what the Court said, told the jury the exhibit wasn't in evidence and merely used to exhibit how much money he had on him. So, therefore, luggage is not an issue. Well, I don't think the Court said luggage is not an issue in the case. Certainly the prosecutor had said in so many words that my client didn't have any luggage. Well, let's go to harmless error. As I understand, there was evidence your client was driving the tractor-trailer. He had his name on it. There were nine blocks of marijuana that were found in a cab behind the driver's seat of the tractor-trailer. That's going to be hard to hide, even hard to be unnoticeable. And the marijuana was in plain view on the top bunk. It wasn't hid anyplace. Then the judge gives the instruction that rebuttal summation is only argument, not evidence. The jury has the job to determine the facts. I mean, I'm having a tough time. Even if you get to the fact that you appealed the judge's decision not to allow you to have a rebuttal, how this would not be harm or I don't know how it could be other than harmless error. Okay. Well, a couple of things. First, the marijuana was not in plain view. It was in there was most of it was concealed in a compartment. There's a sleeper in the back of the tractor. And most of it was concealed in that sleeper compartment. There was one bag. I believe it had 13 bundles of marijuana within it in a black bag on top of that compartment. My client testified that he did not go back there before he drove the truck that day and had not seen it. Again, this is the score is repeatedly held in cases like this one where we have single occupant drivers with loads of narcotics. When it comes down to credibility, the harmless error, the error is not harmless. And in addition to the Sanchez case, Velarde Gomez was actually, it was a constitutional question there, but they found no harmless error. United States v. Foster was another border bus case where the client testified and the court found no harmless error. United States v. Liera is another one. You know, as I read our case law, in particular the Hine case, which was relied on, described, summarized in dissent in the panel, we have a different standard for what constitutes harmless error depending on whether the prosecutor engaged in misconduct. If the prosecutor engaged in misconduct, we employ the Hine test, and the Hine test does has in no part of it any explicit statement as to whether or not there would probably or would probably not have been a conviction absent the misconduct. We have those factors. Now, if what the prosecutor did was inadvertent, I think we have a different test. Now, convince me that this is misconduct so that we apply the Hine test. Okay. Well, in the first place, the prosecutor – again, this is something that was plotted out from the beginning. The prosecutor could have asked his agents about the luggage. He could have asked my client about the luggage. I think – Sorry? There's a premise to your argument, but this is a vouching argument, basically. You're saying he didn't ask the witnesses. He implied that he knew something. I don't mean to interrupt you, but I think there was a pre to what you're about to say. No, I appreciate that. I think that's right. I mean, he's telling the jury what the evidence is in rebuttal. Even though that is not, in fact, the evidence. Right. Yeah, sure. And the jury can say, well, he's a prosecutor. He knows about stuff that we didn't see because stuff may have been excluded. Right. Essentially, if you're going to put your finger on what the misconduct is here, if there is misconduct, it's vouching, isn't it? Well, I think that's right. And in the – I know that in the government's brief in response to the opening brief, they took issue with the term misconduct and wanted to characterize it as prosecutorial error. And regardless, the – what happened here is the same thing. Would it be any less problematic if it occurred in the prosecutor's opening? If – In other words, it's the same question I asked you before. Right. I'm still – I'm still having difficulty figuring out why rebuttal or opening or any place or serve rebuttal has anything to do with it. Isn't your argument simply that the prosecutor engaged in misconduct? Well, yes, but it's a – it's a closer case if the argument came in his first closing, because at least I have a chance to respond to it. Well, but you said before that serve – that you wouldn't be willing to concede that having serve rebuttal would have solved the problem. So I don't see how being able to respond to it in your closing would have solved the problem. Well, again, I don't know that it would solve the problem, but it would be a closer case. This is an extreme case because the fact that it occurred in rebuttal makes it more – it's the last thing that the jury hears on their way into the deliberation room. It was something that I didn't get a chance to respond to. So both for purposes of the 20 – the analysis under Rule 29.1 and what constitutes fair advocacy and also harmless error, it's worse here because it was – it was – it came last. I guess what's got me a bit confused here is this. If the argument were appropriate, it wouldn't matter that it occurred in rebuttal, correct? If by appropriate, I don't. If in fact it was based on the record. If it was based on the record. If he could wait till rebuttal to raise it. Well, I think that then we get into sort of this – this amorphous area where we're trying to define what constitutes a new argument. Well, but you go back to Judge Smith's point, and I don't want to spend too much time on this, but let's assume that – that in fact there was evidence in the record that your client had no luggage. And then this prosecutor waited until rebuttal to point that out. Wouldn't that be a fair response to your argument that my client's credible and he only thought he was on a one-day trip and he kept getting – You know, I – again, I think that's a much tougher case. Okay. But I guess my point is I can't – I'm having difficulty understanding why you keep focusing on rebuttal. Isn't the important point here that the argument was inappropriate? It doesn't really matter when it occurred if it was inappropriate, does it? Well, for – when we evaluate what happened here under United States v. Moore and Gleeson and Rubinson and the cases that deal with what constitutes an appropriate response, the fact that it's in rebuttal is – is what makes it – makes us analyze it under that framework. Someone asked you a little while ago what you would say in rebuttal had you been to the court. What would you have said? Well, what I proffered to the court was that I would have argued to the jury that if he wanted to ask my client about luggage, that he could have done so, but he didn't. And beyond that, I – I – frankly, I never really thought it through. I mean, I was – Just a minute. Didn't you say, you know, I would get him to testify that he had a bag? No. That's absolutely not what I said. When I said to the court, I said, it never occurred to me this – this issue about me to ask my client about it, I said my client would have testified, if he had been asked, that he had a bag and doesn't know what happened to it. Then the court at that point interrupted me and said, well, I don't think it's proper argument, and I responded, and I wouldn't do that. What I would say is that the prosecutor had a chance to ask my client about it, and he didn't do it. And then at that point, the – the court denied the request, and I – and I – And, in fact, the prosecutor, when asked, said it wasn't. You could have argued, too, that here's a prosecutor who's – who was out to sandbag you, huh, and – and he must have been very desperate. He must have thought he had a very weak case where he would go and – and engage in that kind of inappropriate behavior, huh? You could have argued that, too. You could have argued to the jury, that shows you what a weak case he is. You know, my client hasn't been impeached. It's their – their obligation to prove his guilt beyond a reasonable doubt. You know, which means you must be sure that he's guilty. That's what you could have done. Well, that's exactly right. And that's basically what I was trying to proffer to the court. And I specifically said – And you could have told the jury that it was unusual to have to have sir rebuttal, but the judge allowed you to do that because – because of the inappropriateness of the conduct of the government. And the government's role is not whether it wins or loses the case, but that justice in a fair trial is done. Isn't that – well, you could have argued that, too. Well, I would like to have argued that. Whether or not I would have gotten away with that, I don't know. See, I'm missing all your good lines. You should have had Judge Pagason say, this takes Judge. I think that was – Certainly. Yeah. And I'll – you know, that's true. I mean, Judge Kaczynski is my mentor. And I – Not so. But I'll tell you that –   I'm not – I'm not – I'm not – I'm not going to say that. I'm not – I'm not – I'm not through yet. I was a district judge for 14 years, and you can look in the appellate records. Maybe once or twice I had cases on appeal. And you know why there were very few cases appealed? Because they all got a fair trial and there was nothing left for them to appeal on. And we know that the government, and particularly in California, the conviction rate is very, very, very high. Sometimes it's 100 percent. So that's why it's important, you know, to conduct a fair trial. And if you give them a fair trial, and the government is prepared, but today they just worry they're going to lose the case. Their whole lives are going to be ruined, you know. Their perfect record is gone. Huh? And they'll — they'll — well, that's — I'm not going to say anything, but that's enough. Go ahead. Roberts. Well, thank you, Your Honor. I see I'm running out of time. I just want to — with respect to this rebuttal issue, I'd just like to point the Court to the United States v. Taylor case from the Seventh Circuit, where they specifically adopted the Advisory Committee notes to Rule 29.1 and said that the fair and effective administration of justice is best served if the defendant knows the arguments actually made by the prosecution in behalf of conviction before the defendant is faced with the decision whether to reply and what to reply. And I mention that only with — because of Your Honor's questions about why is rebuttal important. I think that's why it's important in this case. I see I have about six minutes left. Given the subject matter, I was tempted to ask for 28 minutes of rebuttal, but I would at this point just ask for six. Okay. Thank you. You got it. We'll hear from the government. Bruce Kastner on behalf of the United States, Your Honor. Yeah. Mr. Kastner, I've known you for a long time, right? I was 25 years old the first time I met you. I'm 64 today. I have to admit. Well, I'm going to be 90 next month, so you're still a baby. You know, the older you get, the handsomer you're getting. You never say that to me. I know. No, you are getting better, Ellie. But you kind of remind me of President Taft, who was — He was a big guy, wasn't he? Yeah, a big guy, yeah. Yeah. And he was also President and Chief Justice. But you look like him. Well, I'll take that as a compliment. I like the dark hair and the nice white mustache. The point I was going to make is, Judge Sebal was sitting in the same seat you were sitting in all those years ago, and he specifically found this was a fair trial. And he specifically found that the argument was fair. And he didn't abuse his discretion when he made that finding. Can I ask you something? This always bothers me. You were not the trial lawyer, were you? I was not. So where is the trial lawyer? Why isn't he — He's sitting right behind me. I just lost a bet, so — Why isn't he arguing on behalf of — Because you want the honest answer to that? When I first saw the opinion that said that my trial lawyer agreed with Judge Gilliland that he had sandbagged, I was so ticked off, I said, you know what, I'm taking this case over. But then when I listened to the argument, I understood that he was not agreeing that he did anything disingenuous. He was not agreeing that he did anything wrong. He maintained throughout his argument, I did what was perfectly appropriate. And I agree with that upon looking at the record. And why don't you explain, then, why it's perfectly appropriate to allude to evidence that's not in the record? He did not ask the jury to find there was luggage. He did not ask the jury to find there wasn't luggage. His point wasn't based on whether there was or wasn't luggage. He just made a point — Absolutely was. And he spent — if you read the transcript, the first, like, five pages is on — he spends five pages detailing this movie, A Few Good Men, down to the details about the boots and the uniforms and the, you know, well-made bed, I mean, details that you had to have thought about to accurately, in advance, to accurately be arguing that to the jury. And then he says, and there was no luggage. He does say that. But that's — But that wasn't in the record. There was no evidence. I've read the transcript. There's no evidence in the record whether there's luggage or not, right? There was no testimony about whether there's luggage or not. That is absolutely correct. But if you read his entire argument, what he said was, if there's luggage, his argument doesn't make sense, because he's going to take his luggage and put it right behind him on the shelf where those nine kilos in the plastic bag were, and if he's being duped, no one would have left those — the bag there where his luggage was going to go. And if he didn't have luggage, his story doesn't make sense, because he's three days on the road in El Centro and Blythe in the summertime, and he needs a change of clothes. But what he says is, what's missing? Luggage. He does say it. He doesn't say what you said. He does at the end of his — four pages later, Your Honor. But what he says at least once or twice or three times very clearly is — Where's the luggage? What's missing? Where's the luggage? Absolutely correct. And there was not a single whit of testimony on that, right? There was not. And was there a photograph that he could argue from and say, now you see the entire truck? There was a photograph of the passenger — I mean, the sleeping compartment. Right. But was there a passenger — a photo of — do you think it would be different if the prosecutor had introduced a photograph of all aspects of the truck and then said, what's missing, because now you see everything that we saw when we arrested this gentleman? Would that be different? That would be different. Okay. Wouldn't it be different — wouldn't it be different also if you had used — if you had — you, your — the trial counsel had used the Exhibit K with the agent and said, and this is all you found other than the marijuana in the truck? Yeah. I wouldn't be standing here today. Yeah. You sure wouldn't because — Yeah. I agree 100 percent. I agree 100 percent. But I'm not backing away from my point. You know, I'm having trouble with this. It's clear that there's no evidence whatsoever in the record whether he had luggage or not. In the rebuttal argument, your prosecutor stands up and says there was no luggage. He makes an elaborate point coming out of a movie as to the significance of the fact that there was no luggage. There is no opportunity given to the other side to say there is no evidence. And you say that's fair? Yes, Your Honor, because I say it isn't. If we ended there — And I'm not even yet arguing law. I'm just asking, was that fair? Because if you ended with the argument — I'm sorry. I didn't hear your answer. It would be an issue for me. I didn't hear your answer. Did you say yes, that's fair? I said if you listen to the rest of the argument — I'd like to quote it when I write it up for you. Yeah. No, I'm saying if you listen — So what's your answer, Mr. Judge? My answer is if you look at the entire — No. No. I'm sorry. My question is a yes or no. Putting questions of law — Excuse me. I want to ask the question first. Putting to one side for the moment the questions of law, I'm just asking you a question. Was it fair? It was fair if you listened to his entire argument. You know, the answer is yes or no, and then you can explain. Well, then that comment was fair in context of what he said at the end. If that's all he said, I would be concerned. But that's not all he said. So you agree that if you stopped there, that would not be fair? I would be concerned. I guess you could say it was — Less fair. Yes, less fair. I hadn't thought of those terms, because my point is — Mediocre. Yeah. Somewhere between fair and poor. Yeah. You know, I wouldn't have done it, and I wish — I wouldn't have stopped there. But he didn't stop there. I wouldn't have made that argument and stopped there. But he didn't stop there either. Would you have made that argument at all? I mean, I'm just curious to what extent you would defend bringing in evidence that was not in the record in rebuttal. This is the part of the argument that I — What does the U.S. attorney manual say about that? Well, Your Honor, I don't view this as he was arguing facts, not evidence, because I view his argument in context where he said, lookit. He basically said to the jury, use your common sense. If he had luggage, his story doesn't make sense, because he's not a — going to put it right behind him where the dope is. Well, you know — If he doesn't have luggage, his story doesn't make sense. But you see, that doesn't necessarily make sense. If I've got just a hand — or just a bag that doesn't have very much, I'm not necessarily going to put it there. I may put it all kinds of places. I may put it over on the passenger side. Well, maybe it's not a great argument, but it's a fair argument. Well, but I don't think it — but I don't think it pulls the teeth of what you previously said. There is no luggage. With that elaborate reference to Tom Cruise, I just don't get it. Yeah. Well, what does that whole story about — Well, if you look at the whole story, his bottom line was, when you're looking at the picture, ask yourself what's wrong with the picture. He said, what's missing from this picture? The registration is missing. The trip manifest is missing. Okay. And was there evidence about the registration missing? There was. Yes. Yes. And was there evidence about the manifest — There was. Yes. I agree. And the reason he didn't ask the question about the luggage, he told the panel, is because he didn't know the answer. Okay. And so there was no evidence about the luggage. Yes. Absolutely correct. So it distinguishes itself from all the other things that may have been put there. I agree with that also. I agree 100 percent with that. I guess we're — But why isn't that a new fact? Because he's not asking the jury to find the fact. The way I read his argument, and I think that's the way the panel read it, and I think the way Judge Sobral understood it was, he's not asking to find whether he had luggage or not. He's asking to find the story not reasonable. No, he's not asking them. He's telling them. He's saying, this is the fact. I don't think he said unequivocally there's no luggage. No, that's exactly what he said. What's missing, he said. What's missing? What's missing is luggage. Right. I agree with that 100 percent. I mean, he's telling them what's missing is luggage. Like, sort of, I know stuff you don't know. You know, that judge up there excluded stuff that I know about. Trust me, there's no luggage. Isn't that vouching? Isn't that vouching? If it was like Your Honor just said, that would be vouching. But I don't think that's what he was doing. He was saying to the — But let's say I disagree with you on that. Is that vouching? That would be vouching in what you just said. Okay. So we have that disagreement. So if we decide that, in fact, he was saying there's no luggage, that's vouching. You admit to that. That's improper. Well, what I said, if he — I understand. You don't think it is — you don't think he said that. But let's say we look at the record, and a majority of this panel says he did tell the jury there is no luggage. Okay? Just accept that as a hard, unpleasant fact. That would be vouching, right? I believe it would be. Okay. And that would be improper. That would be improper. Okay. And then if we have an impropriety, then we apply the standard of that case that Judge Fletcher was talking about. Yeah. I know the case. I forget the name, but the five-part test. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Heinz. Mr. Lemmon said, you know, he made three arguments. He could have made them in his opening. He didn't. He made them in his closing. I didn't have a chance to respond. I would like three minutes to serve rebuttal in order to respond. He didn't say misconduct. He didn't say facts not in evidence. He didn't say improper inference. He didn't say any of that that we're talking about. Well, does it make a difference? I asked him those questions, but I'm asking you the question. Does it make a difference what he said? I think it makes a difference. He surely made clear to the judge. I think it makes a difference. Well, let me finish now. He surely made it clear to the judge that he objected to this argument. He may not have asked for the appropriate remedy. Maybe he should have asked for and he later asked for a mistrial. But does it make a difference? Once he brings to the judge's attention that this argument is not based on anything in evidence, doesn't the judge have an obligation to fix it? He didn't actually say this argument is improper based on things not in evidence. He didn't say that. He said it's brand new. That's pretty close. No. He said he could have mentioned it in his opening, and he didn't. So that's substantially different to a trial judge. I'm sure even Judge Pregerson would not necessarily say, whoa, he's making a misconduct motion. I mean, if you're going to come up here and argue misconduct and accuse people of misconduct, you ought to raise the issue below. That's my personal opinion. So your opinion is this issue was waived? Yes. And we should be reviewing only for plain error? We should be reviewing whether or not Judge Subraw abused his discretion in refusing to rebut. That's abuse of discretion. What justifies refusing three minutes of rebuttal? I mean, what would have been lost? Why did the government oppose that? I don't think the government said a word. I think what happened, Mr. Lemon said to Judge Subraw, my guy would have testified he had a bag, and Judge Subraw said, we're not going to speculate what he would have said. But just before he says what his client would have said, he says, with respect to the luggage, he never asked my client about the luggage. It's pretty plain, he's saying there, it is not in evidence. That's what he says. That's what that sentence means. Well, I mean, when you see Judge Subraw's response, he says basically he took the stand, certain things were asked, certain things wasn't. Basically, he's telling Judge — I know, but I'm responding to your statement. He says he never said it was not in evidence. Well, that's how I read that sentence. He says it was not in evidence. He never asked my client about the luggage. I don't think that's a particular enough objection to put Judge Subraw on notice that he's being asked to find misconduct in an argument by the prosecutor. I don't think that's good enough. Well, I don't think he said it's misconduct. And if I'm in trial like that, I'm slow to say misconduct. But I think I would point out the misconduct, which he did. I don't believe he pointed out misconduct. I really don't. Well, he pointed out the fact that the prosecutor said something was true when it was not in evidence. But there's a difference between improper closing argument and misconduct. I believe so, yes, but — What's the difference? I think misconduct, my opinion after doing this for almost 40 years, is misconduct should be limited to cases where the court actually feels that the prosecutor was trying to do something bad, was trying to really — Sort of an evil motive? That's what I — I truly believe that. Because, you know, we all make mistakes. We're doing these trials, you know. We're walking and talking, and we're doing the best we can. My understanding of, you know, prosecutorial misconduct is that it's a term of art that's used rather loosely. It is. It doesn't really mean — Sometimes it does. Sometimes it doesn't. Right. But it always comes across that way. If you get branded misconduct, you're going to carry that brand the rest of your life. Well, he looked like he was pretty well prepared for this argument as he started his rebuttal. He was. He thought about it. He did. And he thought about it long before the — The luggage argument. Yes. I believe that's true. I think that's his first statement. He thought about it. He came up with that, you know — The movie. I saw the movie years ago. I never would have thought to link the arguments. I agree with all that. But I didn't — He knew. He thought about it. He intentionally structured it. And his argument was, when he started out after he went to the movies, was, the point I want to make is when you have evidence, you have things that you find, things that aren't there, but sometimes the things that aren't there or the things that aren't the way they should be, if you have certain circumstances, are as telling as the evidence that you do find. And then he goes on as he argues, and he points to the luggage. And as I said to Judge Fletcher, I think it was Judge Fletcher, I agree if we stop there, that would be a problem. But I don't think it's fair to stop there. You have to look at his whole argument, the whole — I agree if you have to look at his whole — Right. Everything that he was up to. And it's clear that he was trying to emphasize and to draw the jury's attention that there was no luggage. Yes, Your Honor. But his point, his real point, if you look — his real point wasn't whether there was luggage or not. His point was his story doesn't make sense. If he has luggage — I just read you what I understood his point to be. Yeah. But he has another point. I think it's 388. Well, he may have another point, but the jury picks up on things as they go along. And they may not buy his second point, but they could certainly buy his first point. I mean, he can't just sort of say, well, I've got this one point. Ignore it. I'm going to go on to something else. He says, I've got this point to make. And let me then tell you what's really going on. His second point — Why couldn't the jury say, well, we don't really buy this other thing, but, you know, it's a pretty good point. You know, no luggage. He should have had luggage if he was going to be on the road for three days. I think in some circumstances — In fact, they send a note saying, we want to see the inventory. They must have bought something. They must have thought something about that argument. If it really didn't make any difference, like you say he argued, then why would they care about the inventory? I have no idea why they care. They may have wanted to see if they had luggage or not. They may have another reason. I don't know. No one asked. We don't know. Let's assume, despite all indications today, that you're — that a majority of the Court thinks that this was improper argument. Unlikely, but assume it. Let's assume that that's what we find. Do you have another argument? Well, my argument would be, if you're going to go off on misconduct, if you're Whether we call it, as Judge Fletcher says, misconduct or an improper argument or whatever. Let's assume we conclude that. What follows from it? If you conclude there was misconduct? Because my argument would be, you can't find misconduct unless you find plain error. And if you can't find — in order to establish plain error, you have to be convinced that without this mistake, we're in a not-guilty verdict. That's what you have to find. Okay. So you're playing with my hypothetical. So let me make it more clear. I'm sorry. Let me make it more clear. Let's assume, as Judge Fletcher suggests, the objection was preserved. And then let's assume that a majority of this panel finds that the argument was inappropriate. Inappropriate? Inappropriate on a 29. I'm not accepting your categorization of the difference. I'm accepting — No. No. I'm using Judge Baez's it's-a-waste-basket term. Okay. My question — Whatever happens, then, what's your next argument? Is your — is it appropriate on a 29.1? Or appropriate just as facts, not in evidence? I just can't get you to argue harmless error, can I? Yeah, I know. I'm just going to keep fighting the hypothetical. Yeah, no, the standards are different. But, yeah, harmless error — Tell me, under your worst case, what's your best argument? My worst case is that this comment did not materially affect the jury verdict. And I say that for multiple reasons. One, the evidence was, in fact, overwhelming. He's a driver, so occupant, of a truck with his name on it that dopes right behind his head in an unwrapped plastic bag and 200 kilos underneath. He tells a story. I'm doing a commercial job, but he has no registration. He has no trip ticket. He has no cash receipts. He has no — he has nothing to show he's a commercial truck driver. Yeah. Now, is that the test that Hine tells us to apply if Hine is applicable? The answer is no. I was going to say — I was going to say, I think the answer is no. I think you should be totally honest. I didn't view this as a misconduct case. I view this as — Yeah, but I think the question you just asked is, what if this is a misconduct case, then what? What's your argument? My argument is it's still harmless error. Because? Under the Hine test? It's a five-part test. Well, there was no objection about misconduct, so — Well, there was an objection as to what he did. There was an objection, but — Judge, maybe I'm just spitting in the wind here, but it seems to me — I think so. It could be. It could be. Ain't no much where the wind is blowing. Yeah, the wind's blowing the wrong way, too. I understand that totally. I did not view this as a misconduct case. And maybe I messed that up hugely. I thought it was all about — I was denied a survey bottle. That's what the panel went off on? That's why we're glad to have you here, because we know that the USA listens to you. They do, but — And there'll be a video of this, too. You can play it back at their office. You can say — I'm not happy about that.  It'll be right online, you know? But I view this as the judge was asked to do something below. What he was asked to do is give a survey bottle. He denied it. The test for that is abuse of discretion. I did not view this as coming up here to argue — You think it was not an abuse of discretion — Right. — to deny three minutes of a bottle, of a survey bottle? What he said his survey bottle was going to be is, I'm going to stand up and tell the jury that the government could have asked him, and he didn't. Okay. That's not going to affect the verdict. Do we get sursery bottles that say, well, Mr. Lemon could have asked him, too, and he didn't? I mean, it's not that significant. Yeah, but a — But we're looking for a fair trial. We are. Yeah. And your evidence was pretty good here, huh? You know. It was strong. So why did they muck it up? Why doesn't he learn to keep his mouth shut, huh? Your Honor — You know, I mean, you're just trying to give us more business for full employment. Is that it? Seriously. You know, we — you know, we — we want people to have a fair trial and a clean trial. So do I. Yeah. But the trouble is with your people, they go overboard. I don't think — And you know why they go overboard? Because they got too much power today. They got power over sentencing. And they're getting very few trials because of that, because of these abominable — We're getting some trials. What? We've done over 100 trials this year. We're getting some trials. But I don't think Mr. Miller was trying to do any of the things that this Court thinks he did. I don't think he was trying to sandbag — How many of them reversed? Well, he said he was sandbagging them. How many of them reversed? You know, I don't — You've heard your share. Yeah. You've heard your share. Let me ask you about sandbagging. You know, you wanted to say, oh, your lawyer didn't say — because, you know, it wasn't an opinion there, and I think you should have a chance to explain why your trial counsel admission that he engaged in sandbagging was somehow unfair or was unfairly quoted. I mean, he was asked the question, and he said, yes, I was sandbagging. It sounded to me like what he was saying is, look, I did think about this argument ahead of time, and I decided not to make it in the opening because I didn't want to have opposing counsel have a chance to respond to it. So I decided to sandbag him. I think he didn't say that in so many words, but when he used the word sandbagging, I think that's what he was admitting to. Is that not a fair reading? I think it's fair to infer that he was admitting that I could have said it earlier, and I didn't. But he wasn't admitting that he did anything wrong because — No, no, no. Nobody said — I mean, the judgment that he did something wrong was in the opinion. I mean, in the dissent, the judge thought that this was — but there was nothing — there was — there was — it was fair to say that he said he sandbagged. Definitely acquiescing in that word. I didn't — There was sandbagging, right? He could have raised the same argument in his opening. I don't think that's — And had — and given a fair chance to the defense to point out the problems with the analogy. There is no requirement for the government to use every piece of evidence it has at its disposal in its opening. But it has to be a piece of evidence. It's a piece of evidence. I mean, if — you can't use a dog that didn't bark theory without a dog that barks. But I guess I'm definitely not making a good point here that I'm trying to make. But I thought there was a rule about rebuttal being there only for the government to answer points raised by the defense. So presumably, if the defense says nothing at that point, the government can't get up and say, oh, wait a minute, I want to tell you about the dog that didn't bark. It couldn't say that, right? It's limited to the things that are raised by the — by the defense. It's not limited to just facts raised by the defense. It's limited to responding to arguments. His argument — Mr. Lemon's argument was, and he said eight times, my guy's story was reasonable. We can stand up and use facts to say it's not reasonable. That's the whole problem. There isn't any fact in the evidence. I don't understand why you're arguing that he can make reasonable inferences in good faith from the evidence in the record when there was no evidence in the record Rae luggage. It's clear that Your Honor and most of the panel, a lot of the panel don't agree with my point. But I'm going to say it one more time because I think it's correct, even though apparently it's a hard sell. I don't think he was saying that if you read his entire argument. He was saying basically, we don't care if it was luggage or not. Either way, his story doesn't make sense. But the point is, luggage was never in the case. And all of a sudden, all of a sudden, luggage is the centerpiece of the rebuttal. And he says, you know, where's the stuff? The luggage is missing. The luggage is missing. And then at the end, he says, as you've pointed out, it doesn't matter if it was there or not. But all of a sudden, the jury's thinking about luggage. Luggage has never appeared in the case before. The defense hasn't had an opportunity to respond to luggage. And all of a sudden, luggage is a centerpiece of the prosecution's case. And I read the argument. I thought, where is the luggage? I mean, I'm wondering where the luggage is. And the luggage has never appeared before. Well, so it you – I take your point that he may not have actually said the luggage is missing, although he did pretty much. He did say that. Where's the luggage? Where's the luggage? What's missing? Exactly. What's missing? But then you say that he made these alternatives. I mean, I find that kind of your argument a little bit surprising, because the whole theme of the response to the Petition for Rehearing is holding back is fair play. Good trial strategy permits holding back. Sandbagging? Who said that? Gee, that was a bad term. We don't really mean sandbagging. I mean, and now you're sort of taking that one step further and saying, well, actually, it's okay to say all those things, even if it's not in evidence. No, I'm not saying that. If this Court finds that he made a statement, there was no luggage, and since there was no luggage, you should find him guilty, then I'm done. Well, that's what he said. That's not what he said. I don't believe in entirety. Well, you read it in entirety. Well, the only way he took it back in any degree, and I'll just read it to you, which is what you're referring to, and I'm now several pages later, he says, because remember what is missing, among other things, colon, luggage. And then he says, if he didn't have any luggage, or if he had luggage, then the possibility would have been, I've got to put it somewhere, and he put it, where would he put it? He would put it on the bed or on that top shelf. That's the only way in which he possibly withdrew a number of affirmative statements where he says there was no luggage, and that does not strike me as backing off from there was no luggage. Well, Your Honor, it seems to me his point to the jury was not that I care if he had luggage or not. His point was, either way, it doesn't matter. Well, let me ask you, let's go back to your other point, that if, as you said, if we stated there was no luggage, when in fact there's no evidence to that point, I think you agreed in the response to the PFR and to today that that would be improper. But then the next question is, is it reversible? Do you have to be, is there a second part to that? Yes, it would have to be reversible error, and I make an argument it would be harmless error. Isn't it a really good argument? Pardon me? Part of my problem with the harmless error analysis, and this I must say isn't legalese, this is a really good argument. I mean, as Judge Thomas said, when I read it, I sort of said, wow. And so if it's not proper, it's hard for me to see how it was harmless. Well, I guess I'd answer this. I'm not asking the Court a question. I thought it was a really good argument, unfortunately. It is a good argument. If it's proper, it's a terrific argument, and because it's so good, it must have played some role in the jury's analysis. Does the Court read it as he's saying, look, he hasn't got luggage to find him guilty? That's not how I read it. If you read it that way, it's a problem for us. There's no other way to explain the jury's request, is there? Well. You don't have an alternative explanation, right? I do not. Okay. And it does fit the facts. I mean, I guess one goes. It is consistent with their being interested whether it was luggage or not. It is. But it is consistent. Could it be consistent? Well, I want to see how much money he receives, $1.50. That's what they use it as recollection for. Maybe they want to see what else he had on him? I don't know. Why wouldn't that be a readback of testimony rather than looking for the inventory sheet? I don't know the answer to that. Well, you just said something, so you must know the answer. You asked me if there's any possible reason. Right. And you said they might have wanted to know how much money. Why would the inventory sheet? That's what he used it to refresh the agent's recollection for, how much money he'd have on him. The agent says, I don't remember. Here's exhibit K, personal property seized. Does it show how much money he had? Yes, it shows $1.50. Thank you. Then they ask him, would everything seized from him be on that inventory sheet? Yes, it would. Thank you. That was it. So maybe they want to know what else was seized from him. I don't know. I think it's fair to say that maybe they were interested in the luggage. But you can't say that unequivocally because that's what I just told you is what happened. Okay. Fair enough. I kind of lost my track here. You could give your two minutes. We're answering the harmless error somewhere along the way. Okay. I think the evidence was overwhelming. It really was. I don't think it's fair to say. So why have your AUSA pull a stunt like that? I mean, you know, what is it? I mean, this is, I guess, a different way of phrasing Judge Ferguson's question. When you've got a case that looks so overwhelming, you're so sure of victory, why blow it? Why put it in jeopardy with a stunt like this? What do you teach your young lawyers? Well, that's a hard question to answer. We do a lot of training. We do a lot of supervising. When you stand here and defend that conduct and say, boy, that's a good thing to have done, you know, don't you sort of send the wrong lesson to prosecutors? I mean, this is wholly unnecessary, right? Wholly unnecessary. Well, I guess you could say that he didn't have to make that argument. I agree with that. I mean, if you say it's overwhelming, he really didn't need this, did he? I agree with that, too. If it's as overwhelming as you're saying. I agree with that, too. I guess the problem is you wouldn't have done it, right? I would not have. If he'd asked you advice, should I do it? I would have said no. But I don't think that's – I think the problem I'm having and why I'm not making a connection here is, I view his argument as it doesn't matter if he has luggage or not. Apparently, other people don't. I look at it like he was telling them, here's the movie, look at things that are missing. And he went through a whole bunch of stuff. Luggage was not the centerpiece. That was the last of it. But why is it appropriate to argue it doesn't matter whether he had luggage or not when there's no evidence at all in the record about luggage? Let's assume you're right for a second. Let's assume that he's not making an affirmative representation that there was no luggage. I'm still having trouble figuring out why that's an appropriate argument. Because he's trying to tell the jury why this story is not – But you're arguing facts or the absence of facts, not in evidence one way or the other. The reason that having luggage makes the story not reasonable is, you put it where the dope was, and the people who saw it – So I understand the ultimate logic of it. That's not my question. My question is, why is it appropriate to pick on an issue that's not supported by the record one way or another and say, by the way, here's another – here's a brand-new issue, and it really doesn't matter how the evidence on that would have been because I still would win. Isn't that appropriate? Well, it could be. But this case is all about, I took a trip. I took a trip. I took a trip, right? Isn't it fair to infer that if you took a three-day trip, you would have luggage? In fact, Judge Tomlin asked Mr. Lemon at the panel, isn't that a fair inference? If you took a trip, you'd have luggage. If you had luggage, you'd have a door. And you'd expect him to be asked that. Pardon me? You'd expect that question to be asked. Right. You'd expect the question to be asked is, you took a trip. Where's your luggage? The – I don't think the government is – Or to ask whoever did the inventory, did you find luggage? It wasn't. Didn't he take a short trip? I mean, if you believe the story of what happened, he took a short trip, which turned into a long trip later because of a whole series of events, improbable or not. So you don't have – even your argument doesn't make sense that he must have had luggage one way or the other because he was – thought he was going, at least according to the testimony, on a short trip, which you wouldn't necessarily have luggage for, right? If it was a four-hour trip, you wouldn't.  No, but that's because they started in Las Vegas, but then as it turned out, he needed to then go somewhere else, and then he got there, and it turned out there was a problem there, so he had to go somewhere else. Yes. I mean, but his original trip was a – was basically not a – A one-dayer. It was a minus one day. A one-dayer. Yeah. Yeah. But the point is, if you spend three days in Blyth and El Centro, you can at least change your clothes. If you have them. If you have them, if you hadn't thought you were going on a one-day trip. Or it may – That's all good arguments, I guess. Those are good arguments. But, you know, what if – I can see that I'm getting nowhere here, but I've done a lot of closing arguments in my life, and I don't think Mr. Miller was trying to make the point, find this guy guilty because he doesn't have a suitcase. I don't think that was his point. You know, if you were trying to defend what Mr. Miller did in the sense that this was appropriate prosecutorial behavior, I think your office needs to rethink some of its practices. This – I would never think it's appropriate to argue facts not in evidence. Okay. Never. Especially on rebuttal. Especially. The difference we're having here is my view that his story was – he tells you a story about traveling. You know, if he's traveling, you can assume he's going to – should have luggage. But if he doesn't have luggage, it doesn't make sense. His whole story doesn't make sense. This guy was on a three-day commercial trip. If he makes that argument his opening, then opposing counsel can give the other side. Just like you've heard here, people suggest the other side. And you say, well, there's another side to it. But how does he know that that is something he's supposed to say when this doesn't get raised until – until he gets sandbagged by having it raised in the – in the rebuttal? You know, that's – that's the problem. You know, it's that mindset that not only can I pull facts out of thin air, but I can do it at the point when the other side can't even raise the point, can't even make the argument. And then you have a district judge who says, well, good enough. I'm not going to give you three minutes. I'm not going to give you three minutes to point that out to the jury. And if you think that's okay, you probably ought to take the video of this and play it to your office. Just get everybody around. Get one of those big screens. No, I understand what you're saying, Your Honor. And I think – I think you ought to – you ought to play the video. It's going to be instructive. The differences we're having – and maybe it's my fault. I didn't understand this was going to be a misconduct argument. I didn't understand that the claim was he argued facts, not evidence. I understood this was to be a – He argued misconduct. So are you – Yeah, he did. He agreed. I understand that. Are you now – are you now confessing error? Is that what it is? Are you now ready to confess error now that you know what the case is about? I don't want to confess error because I – I know that – Maybe you should talk to the U.S.A. about it. This is what I think, Your Honor. If I – if I believed – if I shared your belief that what Mr. Miller did was to argue facts, not evidence, I would confess error. But I don't believe that. You know? Maybe I'm wrong. Maybe I'm being stubborn. Maybe I'm missing the boat. But when I read his argument, I – Of all three. Could be. Obviously, it's not working. But I would never condone arguing facts, not evidence. I would never condone sad-begging in the pejorative sense. Do me a favor. Do yourself a favor. When you go back to San Diego, this will be up on a – on our website within, what, 24 hours or sooner. And I'd like you and your U.S. attorney and some folks in your office to sit down and view this. And view it – you know, give yourself a chance to cool down. And just view it and see what you think. I understand your – And see whether – see whether this is something that you want to be teaching your line attorneys, your assistant U.S.A.s, that this is proper conduct. I would not be – Sometimes young lawyers make mistakes. Absolutely. And sometimes the right thing to do is to confess error, to say we'll do it again because there was a slip-up. I'm not saying – if you don't think this is the right case, that's fine. Your Honor, let me just – But take a – take a cool look at it. I will. Absolutely, we'll take a cool look at it. But I will just say that Judge Sabra and the panel majority agree with my position. I – I – I understand reasonable rights can differ. Do you think we didn't know this? No, I didn't know this. Do you think this is news? My only point is – We wouldn't be here if this were otherwise. I understand. My only point is reasonable minds can differ. And my view of it is one, and I don't view it as doing what this Court thinks he did. Now, if the – Further to Judge Kaczynski's point, when we use the words prosecutorial misconduct in an opinion, we often get letters from the U.S. Attorney's Office saying, can you please remove the words prosecutorial misconduct, because it has all sorts of implications and consequences down the line and investigation. And we sometimes agree to do that and we sometimes don't. But I think Judge Kaczynski is giving you a good suggestion to avoid having those words appear in an opinion. I understand. I – well, I would just say that we got to this misconduct argument, I think, it would have been much more appropriate if it had come up this way and we could have evaluated in a different light. I wasn't – Not great to be sandbagged is what you're saying. Yeah, exactly. But it would have been best of all if Mr. Miller's supervisor had said, gee, you know, this is a case of possible prosecutorial misconduct and we ought to rethink this case rather than letting it get up to – after you saw the panel opinion, after you saw the dissent. You know, your office has been known when they see a strong dissent to confess error. You remember? I was the chief of criminal at that point. I was the one that did that. Exactly. I brought that about. Sometimes it's a good thing to do. I just did not view this case, and I'm not sure that I still view this case. Has Mr. Miller – Ever got you closer? Ever got you a little closer? I'm going to stay while I'm on TV here. Could you read the red brief? I mean, that – that brief basically addresses prosecutorial misconduct. It did, but the opinion doesn't go up on that. I thought we're up here reviewing – But you argue – your office argued it, so how could you be surprised that – The dissent talks about prosecutorial misconduct. I agree with that. So, I mean, that's clearly on the table. It's on the table, but it wasn't ever raised below. So I thought the issue – the entire issue was, was an improperly denied rebuttal. It's still a rebuttal. A piece of discretion. There are no re-do's on – There's no re-do's. I understand that totally. Thank you. Thank you. Do you wish to waive rebuttal? Aye. Be a good idea. I was going to address this idea of plain error, but it's not. Be a good idea. Sit down. Thank you. The case has now been submitted. We are adjourned.
judges: Kozinski, Pregerson, Thomas, McKeown, Wardlaw, W.fletcher, Paez, Rawlinson, Clifton, Nr Smith, Hurwitz, Cjj